FILED
United States Court of Appeals
Tenth Circuit

January 27, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LESLIE WEISE; ALEX YOUNG,

      Plaintiffs - Appellants,

v.

MICHAEL CASPER, in his individual capacity; JAY BOB KLINKERMAN, in his individual capacity,

      Defendants - Appellees,

and

GREG JENKINS, in his individual capacity; STEVEN A. ATKISS, in his individual capacity; JAMES A. O'KEEFE, in his individual capacity and JOHN/JANE DOES 1-2, both in their individual capacities,

      Defendants.

No. 09-1085

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 05-CV-02355-WYD-CBS)**

---

Christopher Hansen (and Catherine Crump of American Civil Liberties Union, New York, New York; Mark Silverstein of American Civil Liberties Union of Colorado, Denver, Colorado; Martha M. Tierney and Jerremy M. Ramp of Kelly, Haglund, Garnsey & Kahn, L.L.C, In cooperation with the ACLU Foundation of Colorado, Denver, Colorado, on the briefs), for Plaintiffs - Appellants.

Sean Gallagher (and Dugan Bliss of Hogan & Hartson, L.L.P., with him on the brief), Denver, Colorado, for Appellee Casper.

Brett Lilly of Brett R. Lilly, L.L.C.,Wheat Ridge, Colorado, (John S. Zakhem and Matthew Cassady of Zakhem & Atherton, L.L.C., Denver, Colorado, on the brief), for Appellee Klinkerman.

---

Before **TACHA**, **HOLLOWAY**, and **KELLY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Plaintiffs-Appellants Leslie Weise and Alex Young appeal from the district court's dismissal of their Bivens complaint against certain defendants. Mr. Weise and Ms. Young brought this action claiming violations of their First Amendment rights. In ruling on pretrial motions, the district court held that Defendants-Appellees Michael Casper and Jay Bob Klinkerman were entitled to qualified immunity. Weise v. Casper, No. 05-cv-02355-WYD-CBS, 2008 WL 4838682 (D. Colo. Nov. 6, 2008). At the parties' request, it then certified its order as a final order pursuant to Fed. R. Civ. P. 54(b). Aplt. App. 152-53. Our jurisdiction arises under 28 U.S.C. § 1291. Because the constitutional right asserted by the Plaintiffs was not clearly established at the time of the alleged violation, we affirm the grant of qualified immunity.

Background

Although our prior decision in this case set out most of the operative facts,

-2-

<u>Weise v. Casper</u>, 507 F.3d 1260, 1262-63 (10th Cir. 2007), later proceedings have better developed the factual record.

The Plaintiffs' suit arises from their attendance at President George W. Bush's March 21, 2005 speech at the Wings Over the Rockies Museum. Aplt. App. 16. The President's speech was an official government event, funded by the government. <u>Id.</u> White House policies and procedures established who could attend. <u>Id.</u> Sometime before the President's speech, the White House Advance Office established a policy of excluding those who disagree with the President from the President's official public appearances. <u>Id.</u> at 18. The Defendants were present at the event, carrying out the White House's instructions and policies. <u>Id.</u> at 20.

The White House made tickets available to any member of the public. Aplt. App. 16. The Plaintiffs obtained tickets from the office of Congressman Bob Beauprez by showing their driver's licenses and writing down their names. <u>Id.</u> On March 21, 2005, Ms. Weise and Mr. Young drove to the event in Ms. Weise's vehicle, which sported a "No More Blood For Oil" bumper sticker. <u>Id.</u> at 17.

Although Mr. Young passed through security without incident, Mr. Klinkerman, a volunteer working for the White House, approached Ms. Weise and told her that she had to wait for the Secret Service to speak with her. Aplt. App. 17. Mr. Casper arrived minutes later wearing a suit, earpiece, and lapel pin. <u>Id.</u>

at 18.  Mr. Casper told Ms. Weise that "she had been 'ID'd'" based on the bumper sticker, and "that if she had any ill intentions" or "tried any 'funny stuff' that [she] would be arrested, but that he was going to let [her] in."  Id.

Mr. Casper let Ms. Weise into the event, but then consulted with Defendants Steven A. Atkiss and James A. O'Keefe, White House Advance Office employees.  Aplt. App. 165.  Mr. Atkiss and Mr. O'Keefe instructed Mr. Casper to eject Plaintiffs from the event.  Id.  Mr. Casper then approached Plaintiffs at their seats and asked them to leave.  Id. at 19.  Plaintiffs were escorted from the event and not allowed to reenter.  Id. at 19-20.  The Secret Service confirmed to Plaintiffs that they were asked to leave because of the bumper sticker on Ms. Weise's vehicle.  Id. at 20, 166-67.

Plaintiffs claim that they never disrupted the event, intended to disrupt the event, or indicated that they would disrupt the event.  Aplt. App. 20.  Mr. Young would have asked the President a question, if given the opportunity.  Id. at 17.

This case is before us for the second time.  In the first appeal, Defendants challenged the district court's denial of qualified immunity.  Weise, 507 F.3d at 1261.  Because a factual question existed as to whether Defendants could assert the qualified immunity defense, we dismissed the interlocutory appeal for lack of jurisdiction.  Id. at 1264-68.

While the first appeal was pending, Plaintiffs deposed Mr. Casper and Mr. Klinkerman, revealing the roles of Defendants Jenkins, Atkiss, and O'Keefe.

-4-

Aplt. Br. at 6; Aplt. App. 10. Because the statute of limitations was about to run, Plaintiffs filed a separate suit against these three Defendants, which was later consolidated into the original suit against Mr. Casper and Mr. Klinkerman. Aplt. Br. at 6; Aplt. App. 10. When the case returned to the district court, Mr.Casper and Mr. Klinkerman again filed motions to dismiss based on qualified immunity. Aplt. App. 23-56. The discovery obtained since the first motion to dismiss resolved the outstanding factual question and demonstrated that Mr. Casper and Mr. Klinkerman were governmental actors entitled to invoke the defense of qualified immunity. Weise, 2008 WL 4838682, at *5. The district court then granted Mr. Casper and Mr. Klinkerman's motions to dismiss based on qualified immunity. Aplt. App. 150-51. It also granted Defendant Jenkins's motion to dismiss for lack of personal jurisdiction. Id.

Discussion

This court reviews de novo a district court's grant of a motion to dismiss based on qualified immunity. Gann v. Cline, 519 F.3d 1090, 1092 (10th Cir. 2008). Well-pleaded factual allegations are taken as true, but a court must also consider whether "they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). Dismissal is not appropriate where "the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th

-5-

Cir. 2007) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility requires sufficient factual content (as opposed to legal conclusions) suggesting "that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

A preliminary question is whether Defendants, as volunteers acting under close government supervision, may assert the defense of qualified immunity. Before the first appeal, the district court held that Defendants could assert qualified immunity if they were acting under the close supervision of federal officials. Weise v. Casper, No. 05-cv-02355-WYD-CBS, 2006 WL 3093133, at *4 (D. Colo. Oct. 30, 2006). Plaintiffs concede that Defendants acted under the close supervision of White House officials at the Wings Over the Rockies event. Aplt. App. 16-21, 58; Weise, 2008 WL 4838682, at *5. On appeal, Plaintiffs do not challenge Defendants' assertion of the qualified immunity defense. Therefore, it is unnecessary to reach the issue.

Qualified immunity "protects governmental officials from liability for civil damages insofar as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The qualified immunity inquiry has two prongs: whether a constitutional violation occurred, and whether the violated right was "clearly established" at the time of the violation. Pearson, 129 S. Ct. at 816.

-6-

In their discretion, courts are free to decide which prong to address first "in light of the circumstances of the particular case at hand." Pearson, 129 S. Ct. at 818. The Pearson Court recognized that skipping the constitutional violation question may conserve judicial resources in "cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." Id. Some cases are so fact-bound that deciding the constitutional question offers "little guidance for further cases." Id. at 819. Further, proceeding directly to the "clearly established" question may avoid the risk of deciding a case incorrectly given insufficient briefing on the constitutional violation question. Id. at 820. Although it is unclear whether Defendants' alleged conduct violated Plaintiffs' constitutional rights, it is obvious that the rights were not clearly established at the time of the violation.

"[F]or a right to be clearly established, 'there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" Cortez v. McCauley, 478 F.3d 1108, 1114-15 (10th Cir. 2006) (en banc) (quoting Medina v. City of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992)). The qualified immunity doctrine does not require a case exactly on point. "Clearly established" does not mean "that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v.

<u>Creighton</u>, 483 U.S. 635, 640 (1987); <u>see also</u> <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002) ("officials can still be on notice that their conduct violates established law even in novel factual circumstances"). Qualified immunity protects "all but the plainly incompetent or those who knowingly violated the law." <u>Morse v. Frederick</u>, 551 U.S. 393, 429 (2007) (citations and internal quotation marks omitted).

The district court held that Defendants did not violate Plaintiffs' constitutional rights and, alternatively, that Plaintiffs had not shown that any such rights were clearly established. <u>Weise</u>, 2008 WL 4838682, at *7-8. Concerning the "clearly established" question, the district court stated: "Plaintiffs do not cite any Tenth Circuit or Supreme Court case that defines the contours of this right as it applies to a situation in which the President, speaking in a limited private forum or limited nonpublic forum, excludes persons for the reasons identified in this Order." <u>Id.</u> at *8. According to Plaintiffs, it "is clearly established First Amendment law that individuals have a right to be free from discrimination based on viewpoint." Aplt. Br. at 9. Stated more precisely, "the government cannot engage in viewpoint discrimination." <u>Id.</u> at 18.

At the most general level, Plaintiffs are correct that the government usually cannot discriminate against a speaker based upon that speaker's viewpoint. But in qualified immunity cases, except in the most obvious cases, broad, general propositions of law are insufficient to suggest clearly established law. <u>See</u>

Brousseau v. Hagan, 543 U.S. 194, 198-99 (2004) (per curiam).  That is because the clearly established law must be such that it would put a reasonable official on notice that his conduct was unlawful.  Id.  That is particularly true here.  Beyond the abstract principle that the government ordinarily cannot discriminate based upon viewpoint, however, a First Amendment claim must be situated somewhere within the free speech jurisprudence because we accord speech various levels of protection depending upon the nature of the speech, the speaker, and the setting. See, e.g., Pleasant Grove City v. Summum, 129 S. Ct. 1125, 1138 (2009) (because government speech "is not subject to the Free Speech Clause," the government as speaker can discriminate on the basis of viewpoint); Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45-46 (1983) (recognizing three types of public fora and varying levels of speech protection depending on the forum); Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 566 (1980) (government regulation of truthful, non-misleading commercial speech regarding lawful activity must directly advance a substantial governmental interest, and the regulation must be no more extensive than necessary to serve that interest); New York Times v. Sullivan, 376 U.S. 254, 279-80 (1964) (public official cannot recover damages for libel unless he proves falsity and actual malice).

Plaintiffs simply have not identified any First Amendment doctrine that prohibits the government from excluding them from an official speech on private

property on the basis of their viewpoint.  For the First Amendment to bar the government from taking action against a speaker, the speaker's activity in question must be (1) speech and (2) protected.  First, the speech at issue, the bumper sticker on Ms. Weise's car, occurred outside the event.  However, Defendants did not suppress Plaintiffs' bumper sticker speech nor did the government prosecute Plaintiffs for the speech.[1]  At the event itself, Plaintiffs

---

[1]  Thus, this case differs from Glasson v. City of Louisville, 518 F.2d 899, 902 (6th Cir. 1975), where a police officer took a sign critical of the President and tore it up, thereby suppressing the plaintiff's speech.

The dissent insists that this case is about "the exercise of First Amendment rights embodied in Ms. Wiese's bumper sticker."  First, the issue on appeal as framed by the Plaintiffs is whether the President has a right to exclude from his appearances those who disagree with his policies and whether it is clearly established that individuals have a right to be free from viewpoint discrimination. Aplt. Br. at 9, 13-14, 20.  Aside from law on viewpoint discrimination, framing the issue in this manner implicates the intersection of the President's rights as a speaker under the government speech doctrine, his rights to expressive association, and the nature of the forum.  Second, such a formulation suggests the case really should have been structured as a First Amendment retaliation case—Plaintiffs were not allowed to attend in retaliation for the constitutionally protected speech on the bumper sticker.  See Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000) (requiring that a plaintiff (1) be engaged in constitutionally protected activity; (2) suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) defendants' actions were motivated by plaintiffs' protected activity).  No such argument appears in the briefs.  The potential relevance of these doctrines reveals that the proper categorization of this case is far more complicated than the dissent acknowledges and that Plaintiffs' rights are far from clearly established.

Of course, when it comes to qualified immunity, merely stating that the government cannot engage in viewpoint discrimination is just about as general as stating that the government cannot engage in unreasonable searches and

(continued...)

-10-

were "not speakers at all," as their counsel conceded at oral argument, but rather attendees. They did not intend to speak at the President's speech.[2] Although Defendants ejected them from the event on the basis of their speech outside the event, Plaintiffs have identified no authority suggesting that mere attendance is transformed into speech or even expressive activity because of their speech elsewhere.

Second, Plaintiffs have not put forth any authority establishing that their presence at the President's speech was protected. In arguing that Defendants' actions violated clearly established constitutional rights, Plaintiffs offer various First Amendment cases holding that the "government cannot engage in viewpoint discrimination." Aplt. Br. at 18-20 (citing, among others, Kingsley Int'l Pictures Corp. v. Regents of the Univ. of the State of N.Y., 360 U.S. 684 (1959) (state could not bar exhibition of non-obscene film advocating adultery); Schacht v.

---

[1](...continued)
seizures—an approach that is too general for the qualified immunity analysis where a plaintiff has the burden of demonstrating not only a constitutional violation, but also a violation of clearly established law. Compare Aplt. Reply Br. at 8 ("public forum analysis is irrelevant in this case because viewpoint discrimination is impermissible in any forum.") with Anderson v. Creighton, 483 U.S. 635, 639-41 (1987) (a formulation that warrantless searches are not permitted absent probable cause and exigent circumstances is too general for qualified immunity purposes).

[2] Plaintiffs have not argued that Mr. Young's desire to ask a question if given the opportunity confers any additional First Amendment protections to their presence at the speech. Rather, they argue, their mere presence at an official Presidential speech, open to the public, was protected by the First Amendment.

United States, 398 U.S. 58 (1970) (reversing conviction for wearing military uniform without authority where defendant had worn uniform in theatrical production opposed to the Vietnam War); Lamb's Chapel v. Center Moriches Union Free Sch. Dist., 508 U.S. 384 (1993) (school district could not exclude religious groups from using school property when not in use for school purposes); see also Aplt. Reply Br. at 10-11 (citing Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819 (1995) (state university could not exclude religious groups from limited public speech forum); R.A.V. v. City of St. Paul, 505 U.S. 377 (1992) (invalidating as viewpoint discrimination a city ordinance prohibiting burning crosses or swastikas or other symbols, etc., that would arouse anger on the basis of race, color, creed, religion or gender); Texas v. Johnson, 491 U.S. 397 (1989) (affirming reversal of conviction for flag-burning); Niemotko v. Maryland, 340 U.S. 268 (1951) (religious speech in a public park); Mesa v. White, 197 F.3d 1041 (10th Cir. 1999) (public comment period of public meeting)). These and other cases that Plaintiffs cite bear a common feature: speech that is protected for some reason. This discussion of impermissible viewpoint discrimination does not amount to clearly established law that provides guidance in these circumstances.

In this context, however, Plaintiffs briefly attempt to remedy that, presenting some factually similar cases in which persons with opposing viewpoints were excluded from Presidential events. Aplt. Br. at 15-17, 21-22

(citing Mahoney v. Babbitt, 105 F.3d 1452 (D.C. Cir. 1997) (National Park Service could not revoke permit for protesters along Pennsylvania Avenue for Presidential inaugural parade, a public forum, based on content of speech); Glasson v. City of Louisville, 518 F.2d 899 (6th Cir. 1975) (protesting in public forum); Pledge of Resistance v. We the People 200, Inc., 665 F. Supp. 414, 416-17 (E.D. Pa. 1987) (permit to use public forum does not justify excluding expressive activity absent actual disruption); Butler v. United States, 365 F. Supp. 1035 (D. Haw. 1973) (denial of motion to dismiss suit against government defendants who stopped protesters from entering Air Force base during Presidential visit); Farber v. Rizzo, 363 F. Supp. 386 (E.D. Pa. 1973) (civil contempt entered against defendants who violated TRO that allowed protesters to remain in a public forum); Sparrow v. Goodman, 361 F. Supp. 566, 568 (W.D.N.C. 1973), aff'd sub nom. Rowley v. McMillan, 502 F.2d 1326 (4th Cir. 1974) (preliminary injunction against police and Secret Service who excluded dissenters from Presidential event at arena)).  Of these cases, only Mahoney, Glasson, and Pledge of Resistance reached the question of whether a constitutional violation occurred.  Plaintiffs fail to recognize a crucial distinction between those three cases and this case: First Amendment protection, in those cases because the plaintiffs wished to speak or demonstrate in a public forum.  Given that distinction, these cases, decided prior to significant First Amendment developments, cannot constitute the clearly established law.

The most similar case weighs against Plaintiffs' argument that the alleged constitutional right was clearly established. In Sistrunk v. City of Strongville, 99 F.3d 194 (6th Cir. 1996), the plaintiff sought access to a Bush-Quayle rally being held at a city park. Id. at 196. The campaign committee had obtained a permit to hold the rally, and the permit provided that the grounds were "limited to the members of the organization and their invitees." Id. The plaintiff obtained a ticket to the rally, and tried to enter wearing a Bill Clinton button. Id. But the "committee prohibited rally participants from carrying or displaying signs or buttons that carried messages critical of President [George H.W.] Bush." Id. Once the plaintiff surrendered her Clinton button, she was allowed to attend the rally. Id. The Sistrunk court analogized the Presidential rally to the parade in Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston, 515 U.S. 557 (1995). In Hurley, "the state could not require private citizens who organized a parade through public streets to include among the marchers a group imparting a message the organizers did not wish to convey." Sistrunk, 99 F.3d at 198 (citing Hurley, 515 U.S. at 572-74). Similarly, the plaintiff in Sistrunk wanted to require the rally organizers to accept her displayed views in their expressive activity, the rally. Id. at 199. "[T]he committee that organized the rally for George Bush could not be compelled to include in its message an expression of confidence for Clinton." Id. Thus, Sistrunk *upheld* the exclusion of the attendee.

In sum, no specific authority instructs this court (let alone a reasonable

-14-

public official) how to treat the ejection of a silent attendee from an official speech based on the attendee's protected expression outside the speech area. To be sure, in some obvious situations, general authority may put a reasonable public official on notice that his or her conduct is violative of constitutional rights. This is not one of them.

Because it is plain that the constitutional right claimed was not clearly established at the time of the alleged violation, Defendants are entitled to qualified immunity. Therefore, we need not reach the question of whether Defendants violated Plaintiffs' constitutional rights.

AFFIRMED.

No. 09- 1085, Weise v. Casper
**HOLLOWAY**, J., dissenting.

I respectfully dissent as explained below.

## I

Plaintiff-appellant Weise expressed an opinion on a matter of great public concern in a manner that has become very familiar in recent decades: She put it on a bumper sticker affixed to her car, stating bluntly: "No more blood for oil." As was said about a sign carried by a protestor against another war more than thirty years ago, "[t]he message that [she] sought to communicate was an expression of her views about important public questions and policies. *This kind of expression is entitled to the greatest constitutional protection.*" *Glasson v. City of Louisville*, 518 F.2d 899, 904 (6th Cir. 1975) (emphasis added).

Ms. Weise's expression did not, however, receive the protection to which it was entitled. Instead, because she had expressed an opinion that operatives of the executive branch disapproved, she and two of her friends – who have not been shown to have any responsibility for the bumper sticker and who may or may not have agreed with its message – were rudely, publicly, and forcefully ejected from a public meeting to which they had properly gained admission by complying with the requirements that had been established. The speaker at the meeting was the President of the United States of America.

Neither Ms. Weise nor Plaintiff Young had committed any objectionable act inside the museum where the speech was to occur, nor had they expressed any

opinion whatsoever within that venue. The sole basis for conspicuously removing them from the premises was the bumper sticker that was attached to Ms. Weise's car, which was parked in a parking lot some distance away, presumably with those of hundreds of other persons.

It is simply astounding that any member of the executive branch could have believed that our Constitution justified this egregious violation of Plaintiffs' rights. *"The right of an American citizen to criticize public officials and policies and to advocate peacefully ideas for change is 'the central meaning of the First Amendment.'"* *Id*. (quoting *New York Times v. Sullivan*, 376 U.S. 254, 273 (1964)) (emphasis added).

The district court found that there had been no violation of Plaintiffs' rights, employing reasoning that is severely misguided and relying on precedents that have no bearing on the questions presented in the instant case. On appeal, the majority opts not to consider whether precious and fundamental constitutional rights were violated, holding only that any violation would not have been necessarily apparent to the Defendants.

I respectfully dissent. I would reach the first issue presented here and would hold that the Plaintiffs' rights under the First Amendment were clearly violated by the Defendants' actions in publicly ejecting them from the audience that had gathered to hear the President's speech on social security. On the second issue, I am unpersuaded by the majority's analysis and conclusion. I would hold

-2-

that the rights so violated were clearly established because of the fundamental importance of the right of free speech on topics of public concern and because no reasonable officer could have believed that it was permissible under the Constitution to humiliate these Plaintiffs solely because one of them had legitimately exercised her right of free speech at another time and place.[1]

Several years ago the Supreme Court held that rights may be clearly established and qualified immunity should be denied "despite notable factual distinctions" from previous cases "so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope v. Pelzer*, 536 U.S. 730, 740 (2002) (quoting *United States v. Lanier*, 520 U.S. 259, 269 (1997)). I would hold that this is a case, like *Hope v. Pelzer*, in which Defendants are not protected by qualified immunity; Defendants violated Plaintiffs' rights on a pretext so flimsy that the violation was obvious.

## II

The allegations of Plaintiffs' Complaint, which establish the underlying facts at this stage of the litigation, are set out in the majority opinion. That

---

[1]Defendants do not dispute that the bumper sticker on Plaintiff Weise's car critical of war policy is protected speech. The majority recognizes that the "speech at issue" here is the bumper sticker, maj. op. at 10, and yet, listing but not discussing cases relied on by Plaintiffs, the majority says that these cases have in common "speech that is protected for some reason," *id*. at 11. This seems to imply that Ms. Weise's speech was not protected, but I cannot believe that the majority truly intends this implication.

summary is correct as far as it goes.[2] It does not, however, fully reflect the allegations of the Complaint (which, of course, we must take as true at this stage) regarding the manner in which Defendants ejected Plaintiffs from the event. The Complaint alleges that Defendant Casper "shouted" to Ms. Weise that she had to leave, and it averred that he "shoved" Mr. Young toward the door. Once outside the event, the Plaintiffs "were confronted by four or five men, two of whom were uniformed police officers . . . ." Complaint at 6.

In addition to taking these well-pleaded facts as true, as required, we are to draw from the facts all reasonable inferences in favor of the Plaintiffs. One such inference, clearly supported by these facts, is that being publicly and prominently ejected from the audience in this manner caused extreme embarrassment and humiliation to the Plaintiffs. Our duty is to determine whether such treatment was justified.

### III

The majority correctly notes that the Supreme Court has recently rejected the framework for analysis in cases involving the defense of qualified immunity that required lower federal courts to decide first whether a plaintiff has pleaded a violation of constitutional right before deciding whether the right so infringed

---

[2]The majority opinion does, however, insert in its analysis section one "fact" that is outside the pleading, declaring that the museum at which the President spoke was private property. Although this may (or may not) be correct, it is outside the record in this appeal, as far as I can determine.

-4-

was clearly established.  *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808 (2009) (overruling, in part, *Saucier v. Katz*, 533 U.S. 194 (2001)).  Nevertheless, the Court, while partially overruling *Saucier*, was careful to point out that *Saucier* "was certainly correct in noting that the two-step procedure promotes the development of constitutional precedent and *is especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable.*"  *Pearson v. Callahan*, 129 S.Ct. at 818 (emphasis added).

I am persuaded that this is a case in which the issue of whether a right has been violated should be addressed at the outset.  In recent years there have been several cases across the nation in which citizens have sought redress for alleged infringement of their fundamental liberties under somewhat similar circumstances.[3]  Because the right of free speech on matters of public concern is so vital to our democracy, these are important cases, and the judiciary has a valid and vital role in our society's response.  The importance of the issues raised in this appeal should weigh heavily in favor of our consideration of them on the

<hr>

[3]*See, e.g.*, *McCabe v. Macaulay*, 551 F.Supp.2d 771 (N.D. Iowa 2007) (rally for incumbent President at a public park; protestors arrested on public property while trying to comply with law enforcement orders; persons in the same area demonstrating views favorable to the President were not confronted); *Rank v. Hamm*, 2007 WL 894565 (S.D.W.Va. Mar 21, 2007) (Presidential address on July 4 on the grounds of the state Capitol; plaintiffs arrested for wearing shirts with messages critical of the President).  Other cases and incidents are cited in the briefs herein and in various legal journals.  *See, e.g.*, Kimberly Albrecht-Taylor, Note, *Giving Dissenters Back Their Rights:  How the White House Presidential Advance Manual Changes the First Amendment and Standing Debates*, 17 Wm. & Mary Bill Rts. J. 539 (2008).

merits.

Furthermore, in this case the district court was still operating under the rule of *Saucier* and so analyzed and resolved the constitutional issue. That ruling, although unpublished and not precedential, is a significant one. It is also, in my view, deeply misguided. As a consequence, I conclude that the need to decide the constitutional question is especially pressing here.

Accordingly, I dissent from the majority's course of forgoing this opportunity to consider an issue of great importance to our country. I would address this issue, and I would decide it in favor of the Plaintiffs.

**IV**
A

The district court determined that there had been no constitutional violation. The judge reasoned that the focus of the Complaint was that Plaintiffs had not been permitted "to participate *in the President's speech.*" (Emphasis in original.) To the contrary, however, the Complaint makes it quite clear that the Plaintiffs here did *not* wish to participate in the President's speech but only to attend it. *See* Complaint at 4, 7. Thus, the district court's analysis was based on a patently erroneous reading of the Complaint: Plaintiffs' claim is surely not based on denial of the opportunity to participate in the President's speech, an opportunity that they never sought nor claimed to have sought.

Relying primarily on *Sistrunk v. City of Strongsville*, 99 F.3d 194, 196-200

(6th Cir. 1996), which he termed "particularly instructive," the district judge held that the controlling principle is that when the President chooses to speak, he has the right to control his message, including the right to exclude another's viewpoint: "President Bush had the right, at his own speech, to ensure that only his message was conveyed."[4]

Not only did the district court base its analysis on an erroneous reading of the Complaint, but its reliance on *Sistrunk* was misplaced. In *Sistrunk*, a majority of a divided panel held that a *private* entity, the Bush-Quayle election committee, could exclude from its *private* rally a person *who was wearing a button expressing support for an opposing candidate*. Our case deals with a public event, and Plaintiffs did not attempt to express *any* opinion in the course of their attendance.[5] These two very significant differences in the underlying circumstances result in *Sistrunk* being of very limited relevance to this appeal. Moreover, the unfounded notion of equivalence between mere attendance at a public event and attempting to participate in the message being delivered at the event is very troubling to me, as I shall explain *infra*.

---

[4]In discussing *Sistrunk*, the district court noted that case had relied on *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995). Besides those two cases, the only one cited in his brief discussion of the issue was *Wells v. City and County of Denver*, 257 F.3d 1132, 1143 (10th Cir. 2001).

[5]Indeed, this case is almost a polar opposite of *Sistrunk* with regard to the Plaintiffs' behavior. Their only expression of opinion was on the bumper sticker, about as far removed from trying to express themselves at the event as can be.

B

I would hold that Plaintiffs have sufficiently alleged that the Defendants violated Plaintiffs' rights under the First Amendment by ejecting them from the President's speech. Plaintiffs aver that Defendants agreed "to expel persons with viewpoints opposed to the President's . . . . They also conspired to seize plaintiffs . . . ." Complaint at 7.[6] Defendants took this action solely "as a result of the bumper sticker on Ms. Weise's vehicle." *Id*.

The issue thus framed is stark: Defendants excluded Plaintiffs from the President's public speech – after they had obtained tickets, cleared security screening and been seated in the audience – due to the protected expression by one of them outside the event.[7] The question, then, is whether the Constitution permitted Defendants to take this action against Plaintiffs for this reason. The answer, informed by decades of free speech jurisprudence – must be a resounding "no."

More than 35 years ago, the Supreme Court said:

---

[6]Plaintiffs pleaded a violation of their rights under the First and Fourth Amendments, but on appeal argue only that their First Amendment free speech rights were violated.

[7]The majority appears to place some importance on the facts that "Defendants did not suppress Plaintiffs' bumper sticker speech nor did the government prosecute Plaintiffs for the speech." Maj. op. at 10. Of course the suggestion that the government could have done either is far outside the pale. More importantly, the significant fact is that the Defendants did assault, embarrass and publicly humiliate the Plaintiffs in response to this protected conduct by one of them.

-8-

For at least a quarter-century, this Court has made clear that even though a person has no "right" to a valuable governmental benefit and even thought the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. *It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests – especially, his interest in freedom of speech.* For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. . . . . Such interference with constitutional rights is impermissible.

*Perry v. Sinderman*, 408 U.S. 593, 597 (1972) (emphasis added). The Court went on to note that (as of 1972) it had applied this principle to denials of tax exemptions, unemployment benefits and welfare payments, and denial of public employment. *Id*.

The Court recently reiterated this bedrock and longstanding principle of First Amendment adjudication: "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right,' and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (quoting *Crawford-El v. Britton*, 523 U.S. 547, 588 n.10, 592 (1998)). "A more invidious classification than that between persons who support government officials and their policies and those who are critical of them is difficult to imagine." *Glasson v. City of Louisville*, 518 F.2d 899, 912 (6th Cir. 1975).

Although it is Plaintiffs' burden of persuasion to show that they have

alleged a violation of their rights, it is nevertheless useful to turn the question around: On what basis could a representative of the executive branch have thought, on seeing Plaintiffs alight from Ms. Weise's car with its bumper sticker, that they could be excluded from a public event solely because Ms. Weise had chosen to exercise her most fundamental First Amendment right *outside* of the event and in the complete absence of *any* indication that Plaintiffs intended to even speak at the event, much less any indication of any intent to disrupt the event?

Because the Plaintiffs' speech was on a matter of great public concern, it was entitled to the utmost in Constitutional protection. Because the prohibition on viewpoint discrimination is so well established, Defendants violated Plaintiffs' established rights by excluding them from the President's speech solely on the basis of the protected message of the bumper sticker.

C

Defendants rely heavily on the contention that Plaintiffs' attendance at the President's speech would have constituted participation in the speech. Thus, one brief states that "the President has the right to control the message of his own speech, which includes the right to exclude *speakers* who express disagreement with that message." Response Brief of Appellee Michael Casper at 4 (emphasis added). The other Defendant's brief includes the statement that "Plaintiffs have no constitutional right to require the President, at his own speech, to adopt or

-10-

even allow *their dissenting speech . . . .*" Brief for Appellee Klinkerman at 12 (emphasis added). Clearly this is a red herring. Plaintiffs averred, and again we must accept as fact, that they had no intention to disrupt the speech or even to express themselves at the speech.[8]

Defendants go further in their advocacy of this position. They argue that Plaintiffs' mere attendance at the President's speech is somehow equivalent to expression of their opinions at the speech. As noted, the district court accepted this contention. And although the majority does not expressly endorse this view, and indeed seems to reject it expressly at one point, the majority's reference to *Sistrunk* as the "most similar case" is a troubling echo of the contention.

Accordingly, I think it important to say, with some emphasis, that I reject this proposition. "Merely being present at a public event does not make one part of the organizer's message for First Amendment purposes." *Gathright v. City of Portland*, 439 F.3d 573, 577 (9th Cir. 2006).[9] It simply makes no sense to

---

[8]Appellant Young intended to attempt to be recognized to ask a question *if* the President, in his sole discretion, opted to take questions from the audience. Because that intention was unknown to the Defendants, they have not suggested that their actions were motivated by this possibility which, in any event, was something which would not have occurred unless the President decided to open the floor to questions.

[9]The Ninth Circuit was quoting, with approval, the opinion of the district judge in the case it was reviewing. *Gathright v. City of Portland*, 315 F.Supp.2d 1099, 1103 (D. Ore. 2004). The same language was quoted with approval in *Wickersham v. City of Columbia*, 371 F.Supp.2d 1061, 1084 (W.D. Mo. 2005), *aff'd*, 481 F.3d 591 (8th Cir. 2007).

suppose that the mere presence in the audience of persons who might have some disagreement with the President on some issues would have any effect on the President's message. Moreover, it is fanciful to suppose that an audience could have been assembled that did not include any persons who disagreed with the President on any issue. And if the violation of these Plaintiffs' rights was based on an assumption that one who disagrees with the President on one issue is likely to disrupt or embarrass the President when he speaks, that is an assumption that cannot stand in the face of the First Amendment.

As already noted, Defendants persuaded the district court that *Sistrunk v. City of Strongsville*, 99 F.3d 194 (6th Cir. 2006), was "persuasive." Defendants rely heavily on that case again in this appeal, and the majority here finds it the "most similar" case. Consequently, additional comment on my view of that case seems appropriate.

In *Sistrunk*, the event in question was deemed by the court to be a private affair, and the opinion is very clear that this was essential to the court's reasoning. Although the event was to be held on municipal property, the city had granted a permit to the Strongsville Republican Organization for use of the property for a political rally on a certain date for the nominal sum of one dollar. "The permit specifically provided that the use of the facilities and grounds was

limited to the members of the organization and their invitees." 99 F.3d at 196.[10]

The facts in the appeal before us are quite different. The event was not sponsored by a private group but by the Article II executive branch of the United States. Plaintiffs' Complaint alleges that the event was open to all members of the public who were able to obtain tickets. Tickets were distributed on a first-come-first-served basis, and Plaintiffs obtained their tickets merely by showing identification.

Moreover, the plaintiff in *Sistrunk* had attempted to attend the Bush-Quayle campaign's event while wearing a button expressing support for their opponent, so that the assertion that the plaintiff was attempting to participate in the rally by expressing her own message had at least some factual basis in that case.[11] The district court apparently found these distinctions unimportant, but I conclude that they are of considerable significance in the constitutional analysis and effectively undercut the district court's entire rationale.

---

[10]The dissenting judge in *Sistrunk* was not convinced that a traditional public forum had been transformed into a private forum through the use of a permit. 99 F.3d at 202-203 (Spiegel, D.J., dissenting).

[11]The dissenter, however, was not persuaded, rejecting the majority's conclusion that "being a member of the rally's audience" was like marching in the parade, the expressed wish of the plaintiff in *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995). The dissent said that one who marches in a parade "is an active participant . . . while one in attendance at a political rally is merely a spectator. In actuality, marching in a parade is equivalent to speaking at a rally since both are involved in conveying the message." *Sistrunk*, 99 F.3d at 201 (Spiegel, D.J., dissenting).

-13-

D

In this appeal, the majority goes awry in another way. Plaintiffs have clearly based their claim on the protected speech that was on the bumper sticker. Yet the majority notes, apparently as a factor that somehow weighs against the Plaintiffs, that no authority is cited to suggest that attendance "is transformed into speech or even expressive activity because of their speech elsewhere." Maj. op. at 10. No authority is given for that suggestion, I venture to say, because that is not the Plaintiffs' theory of their case.[12]

The majority, however, seems to find this notion significant, as the opinion goes on to say that the cases relied on by Plaintiffs all concern "speech that is protected for some reason." Maj. op. at 11. The implication seems to be that this case is only about Plaintiffs' attempted attendance at the President's speech, which the majority does not find to be protected. *But that is not the case that has been brought before us.* Instead, the Plaintiffs have been quite clear in basing their cause of action on the exercise of First Amendment rights embodied in Ms. Weise's bumper sticker.

Thus, we address here speech that is unquestionably protected, or more accurately, entitled to be protected under the First Amendment. It is severely distressing that such protection is not forthcoming from this court.

---

[12]Indeed, in the same paragraph, the majority recognizes that "the speech at issue [is] the bumper sticker on Ms. Weise's car."

# V

I would also hold that the rights which were violated by the Defendants were so well established that a reasonable officer should have known that this conduct was unlawful. For a court to find that a constitutional right was clearly established, "its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . . [I]n the light of pre-existing law[,] the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal citations and quotation marks omitted).

It is not necessary for Plaintiffs to identify a precedent involving the same factual situation:

> [G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and . . . *a general constitutional rule* already identified in the decisional law *may apply with obvious clarity* to the specific conduct in question, even though the very action in question has not previously been held unlawful.

*Id*. at 741 (emphasis added; internal quotations and citations omitted). Thus, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id*.

The prohibition against viewpoint discrimination is unquestionably well established. A particularly articulate expression of the rule is that

> there are some purported interests – such as a desire to suppress support for a minority party or an unpopular cause, or to exclude the expression of certain points of view from the marketplace of ideas – that are so plainly illegitimate [that they cannot be tolerated]. The general principle that has emerged from this line of cases is that the

First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others.

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 804 (1984).

It has been similarly well established for years that taking action against a person for exercise of the protected rights is prohibited in most circumstances. Considering action taken against a deputy sheriff that, for purposes of summary judgment, was assumed to have been based on his exercise of protected speech about the political philosophy of an incumbent and a potential challenger, we held that the law had been well established in January 1998 that freedom of expression includes the freedom to opine on issues of public concern. "Consequently, a reasonable official would understand that removing [the deputy's] commission based on his expressed preference for one individual's philosophy over another . . . violated [the deputy's] free speech rights." *Bass v. Richards*, 308 F.3d 1081, 1090 (10th Cir. 2002).

The only question, then, is whether there is something in the factual context in which the issue arises in the instant appeal that would raise doubt about the application of the prohibition on viewpoint discrimination. I firmly believe that there is no such uncertainty. The Plaintiffs (or one of them) engaged in protected speech. Quite separate from that, in time and location, they were admitted to the audience for a Presidential address, having satisfied all conditions for admission.

Based only on a demonstration of protected speech on the bumper sticker of the car that Plaintiffs had parked some distance away from the speech, representatives of the Executive publicly ostracized and humiliated the Plaintiffs.

I see no basis whatsoever for any doubt about the impropriety of this conduct. Instead, I would firmly hold that the right of freedom of speech and the prohibition on taking adverse actions against a speaker based solely on her point of view "apply with obvious clarity"[13] to the facts of this case.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Accordingly, I respectfully dissent.

---

[13]*Hope v. Pelzer*, 536 U.S. at 741.