PAUL KELLY, Jr., Circuit Judge.
Plaintiffs-Appellants Leslie Weise and Alex Young appeal from the district court’s dismissal of their Bivens complaint against certain defendants. Ms. Weise and Mr. Young brought this action claiming violations of their First Amendment rights. In ruling on pretrial motions, the district court held that Defendants-Appellees Michael Casper and Jay Bob Klinkerman were entitled to qualified immunity. Weise v. Casper, No. 05-ev-02355-WYD-CBS, 2008 WL 4838682 (D.Colo. Nov.6, 2008). At the parties’ request, it then certified its order as a final order pursuant to Fed.R.Civ.P. 54(b). ApltApp. 152-53. Our jurisdiction arises under 28 U.S.C. § 1291. Because the constitutional right asserted by the Plaintiffs was not clearly established at the time of the alleged violation, we affirm the grant of qualified immunity.

Background

Although our prior decision in this case set out most of the operative facts, Weise v. Casper, 507 F.3d 1260, 1262-63 (10th Cir.2007), later proceedings have better developed the factual record.
The Plaintiffs’ suit arises from their attendance at President George W. Bush’s March 21, 2005 speech at the Wings Over the Rockies Museum. ApltApp. 16. The President’s speech was an official government event, funded by the government. Id. White House policies and procedures established who could attend. Id. Sometime before the President’s speech, the White House Advance Office established a policy of excluding those who disagree with the President from the President’s official public appearances. Id. at 18. The Defendants were present at the event, carrying out the White House’s instructions and policies. Id. at 20.
The White House made tickets available to any member of the public. ApltApp. 16. The Plaintiffs obtained tickets from the office of Congressman Bob Beauprez by showing their driver’s licenses and writing down their names. Id. On March 21, 2005, Ms. Weise and Mr. Young drove to the event in Ms. Weise’s vehicle, which sported a “No More Blood For Oil” bumper sticker. Id. at 17.
Although Mr. Young passed through security without incident, Mr. Klinkerman, a volunteer working for the White House, approached Ms. Weise and told her that she had to wait for the Secret Service to speak with her. ApltApp. 17. Mr. Casper arrived minutes later wearing a suit, earpiece, and lapel pin. Id. at 18. Mr. Casper told Ms. Weise that “she had been TD’d’ ” based on the bumper sticker, and “that if she had any ill intentions” or “tried any ‘funny stuff that [she] would be arrested, but that he was going to let [her] in.” Id.
Mr. Casper let Ms. Weise into the event, but then consulted with Defendants Steven A. Atkiss and James A. O’Keefe, White House Advance Office employees. Aplt. App. 165. Mr. Atkiss and Mr. O’Keefe instructed Mr. Casper to eject Plaintiffs from the event. Id. Mr. Casper then approached Plaintiffs at their seats and asked them to leave. Id. at 19. Plaintiffs were escorted from the event and not allowed to reenter. Id. at 19-20. The Secret Service confirmed to Plaintiffs that they were asked to leave because of the bumper sticker on Ms. Weise’s vehicle. Id. at 20,166-67.
Plaintiffs claim that they never disrupted the event, intended to disrupt the event, or indicated that they would disrupt the event. ApltApp. 20. Mr. Young would *1166 have asked the President a question, if given the opportunity. Id. at 17.
This case is before us for the second time. In the first appeal, Defendants challenged the district court’s denial of qualified immunity. Weise, 507 F.3d at 1261. Because a factual question existed as to whether Defendants could assert the qualified immunity defense, we dismissed the interlocutory appeal for lack of jurisdiction. Id. at 1264-68.
While the first appeal was pending, Plaintiffs deposed Mr. Casper and Mr. Klinkerman, revealing the roles of Defendants Jenkins, Atkiss, and O’Keefe. Aplt. Br. at 6; Aplt.App. 10. Because the statute of limitations was about to run, Plaintiffs filed a separate suit against these three Defendants, which was later consolidated into the original suit against Mr. Casper and Mr. Klinkerman. Aplt. Br. at 6; Aplt.App. 10. When the case returned to the district court, Mr. Casper and Mr. Klinkerman again filed motions to dismiss based on qualified immunity. ApltApp. 23-56. The discovery obtained since the first motion to dismiss resolved the outstanding factual question and demonstrated that Mr. Casper and Mr. Klinkerman were governmental actors entitled to invoke the defense of qualified immunity. Weise, 2008 WL 4838682, at *5. The district court then granted Mr. Casper and Mr. Klinkerman’s motions to dismiss based on qualified immunity. ApltApp. 150-51. It also granted Defendant Jenkins’s motion to dismiss for lack of personal jurisdiction. Id.

Discussion

This court reviews de novo a district court’s grant of a motion to dismiss based on qualified immunity. Gann v. Cline, 519 F.3d 1090, 1092 (10th Cir.2008). Well-pleaded factual allegations are taken as true, but a court must also consider whether “they plausibly give rise to an entitlement to relief.” Ashcroft v. Iqbal, - U.S. -, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009). Dismissal is not appropriate where “the complaint contains ‘enough facts to state a claim to relief that is plausible on its face.’” Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir.2007) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Facial plausibility requires sufficient factual content (as opposed to legal conclusions) suggesting “that the defendant is liable for the misconduct alleged.” Iqbal, 129 S.Ct. at 1949.
A preliminary question is whether Defendants, as volunteers acting under close government supervision, may assert the defense of qualified immunity. Before the first appeal, the district court held that Defendants could assert qualified immunity if they were acting under the close supervision of federal officials. Weise v. Casper, No. 05-cv-02355-WYD-CBS, 2006 WL 3093133, at *4 (D.Colo. Oct.30, 2006). Plaintiffs concede that Defendants acted under the close supervision of White House officials at the Wings Over the Rockies event. Aplt.App. 16-21, 58; Weise, 2008 WL 4838682, at *5. On appeal, Plaintiffs do not challenge Defendants’ assertion of the qualified immunity defense. Therefore, it is unnecessary to reach the issue.
Qualified immunity “protects governmental officials from liability for civil damages insofar as their conduct does not violate ‘clearly established statutory or constitutional rights of which a reasonable person would have known.’ ” Pearson v. Callahan, — U.S. -, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The qualified immunity inquiry has two prongs: *1167 whether a constitutional violation occurred, and whether the violated right was “clearly-established” at the time of the violation. Pearson, 129 S.Ct. at 816.
In their discretion, courts are free to decide which prong to address first “in light of the circumstances of the particular case at hand.” Pearson, 129 S.Ct. at 818. The Pearson Court recognized that skipping the constitutional violation question may conserve judicial resources in “cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right.” Id. Some cases are so fact-bound that deciding the constitutional question offers “little guidance for further cases.” Id. at 819. Further, proceeding directly to the “clearly established” question may avoid the risk of deciding a case incorrectly given insufficient briefing on the constitutional violation question. Id. at 820. Although it is unclear whether Defendants’ alleged conduct violated Plaintiffs’ constitutional rights, it is obvious that the rights were not clearly established at the time of the violation.
“[F]or a right to be clearly established, ‘there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.’ ” Cortez v. McCauley, 478 F.3d 1108, 1114-15 (10th Cir.2007) (en banc) (quoting Medina v. City of Denver, 960 F.2d 1493, 1498 (10th Cir.1992)). The qualified immunity doctrine does not require a case exactly on point. “Clearly established” does not mean “that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.” Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); see also Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (“officials can still be on notice that their conduct violates established law even in novel factual circumstances”). Qualified immunity protects “all but the plainly incompetent or those who knowingly violated the law.” Morse v. Frederick, 551 U.S. 393, 429, 127 S.Ct. 2618, 168 L.Ed.2d 290 (2007) (citations and internal quotation marks omitted).
The district court held that Defendants did not violate Plaintiffs’ constitutional rights and, alternatively, that Plaintiffs had not shown that any such rights were clearly established. Weise, 2008 WL 4838682, at *7-8. Concerning the “clearly established” question, the district court stated: “Plaintiffs do not cite any Tenth Circuit or Supreme Court case that defines the contours of this right as it applies to a situation in which the President, speaking in a limited private forum or limited nonpublic forum, excludes persons for the reasons identified in this Order.” Id. at *8. According to Plaintiffs, it “is clearly established First Amendment law that individuals have a right to be free from discrimination based on viewpoint.” Aplt. Br. at 9. Stated more precisely, “the government cannot engage in viewpoint discrimination.” Id. at 18.
At the most general level, Plaintiffs are correct that the government usually cannot discriminate against a speaker based upon that speaker’s viewpoint. But in qualified immunity cases, except in the most obvious cases, broad, general propositions of law are insufficient to suggest clearly established law. See Brousseau v. Haugen, 543 U.S. 194, 198-99, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam). That is because the clearly established law must be such that it would put a reasonable official on notice that his conduct was unlawful. Id. That is particularly true here.
*1168 Beyond the abstract principle that the government ordinarily cannot discriminate based upon viewpoint, however, a First Amendment claim must be situated somewhere within the free speech jurisprudence because we accord speech various levels of protection depending upon the nature of the speech, the speaker, and the setting. See, e.g., Pleasant Grove City v. Summum, — U.S. -, 129 S.Ct. 1125, 1138, 172 L.Ed.2d 853 (2009) (because government speech “is not subject to the Free Speech Clause,” the government as speaker can discriminate on the basis of viewpoint); Perry Educ. Ass’n v. Perry Local Educators’ Ass’n, 460 U.S. 37, 45-46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) (recognizing three types of public fora and varying levels of speech protection depending on the forum); Central Hudson Gas & Elec. Corp. v. Public Serv. Comm’n, 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) (government regulation of truthful, non-misleading commercial speech regarding lawful activity must directly advance a substantial governmental interest, and the regulation must be no more extensive than necessary to serve that interest); New York Times v. Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (public official cannot recover damages for libel unless he proves falsity and actual malice).
Plaintiffs simply have not identified any First Amendment doctrine that prohibits the government from excluding them from an official speech on private property on the basis of their viewpoint. For the First Amendment to bar the government from taking action against a speaker, the speaker’s activity in question must be (1) speech and (2) protected. First, the speech at issue, the bumper sticker on Ms. Weise’s car, occurred outside the event. However, Defendants did not suppress Plaintiffs’ bumper sticker speech nor did the government prosecute Plaintiffs for the speech.[1] At the event *1169 itself, Plaintiffs were “not speakers at all,” as their counsel conceded at oral argument, but rather attendees. They did not intend to speak at the President’s speech.[2] Although Defendants ejected them from the event on the basis of their speech outside the event, Plaintiffs have identified no authority suggesting that mere attendance is transformed into speech or even expressive activity because of their speech elsewhere.
Second, Plaintiffs have not put forth any authority establishing that their presence at the President’s speech was protected. In arguing that Defendants’ actions violated clearly established constitutional rights, Plaintiffs offer various First Amendment cases holding that the “government cannot engage in viewpoint discrimination.” Aplt. Br. at 18-20 (citing, among others, Kingsley Int’l Pictures Corp. v. Regents of the Univ. of the State of N.Y., 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959) (state could not bar exhibition of non-obscene film advocating adultery); Schacht v. United States, 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970) (reversing conviction for wearing military uniform without authority where defendant had worn uniform in theatrical production opposed to the Vietnam War); Lamb’s Chapel v. Center Moriches Union Free Sch. Dist., 508 U.S. 384, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993) (school district could not exclude religious groups from using school property when not in use for school purposes); see also Aplt. Reply Br. at 10-11 (citing Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995) (state university could not exclude religious groups from limited public speech forum)); R.A.V. v. City of St. Paul, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) (invalidating as viewpoint discrimination a city ordinance prohibiting burning crosses or swastikas or other symbols, etc., that would arouse anger on the basis of race, color, creed, religion or gender); Texas v. Johnson, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (affirming reversal of conviction for flag-burning); Niemotko v. Maryland, 340 U.S. 268, 71 S.Ct. 328, 95 L.Ed. 280 (1951) (religious speech in a public park); Mesa v. White, 197 F.3d 1041 (10th Cir.1999) (public comment period of public meeting)). These and other cases that Plaintiffs cite bear a common feature: speech that is protected for some reason. This discussion of impermissible viewpoint discrimination does not amount to clearly established law that provides guidance in these circumstances.
In this context, however, Plaintiffs briefly attempt to remedy that, presenting some factually similar cases in which persons with opposing viewpoints were excluded from Presidential events. Aplt. Br. at 15-17, 21-22 (citing Mahoney v. Babbitt, 105 F.3d 1452 (D.C.Cir.1997) (National Park Service could not revoke permit for protesters along Pennsylvania Avenue for Presidential inaugural parade, a public forum, based on content of speech); Glasson v. City of Louisville, 518 F.2d 899 (6th Cir.1975) (protesting in public forum); Pledge of Resistance v. We the People 200, Inc., 665 F.Supp. 414, 416-17 (E.D.Pa.1987) (permit to use public forum does not justify excluding expressive activity absent actual disruption); Butler v. United States, *1170 365 F.Supp. 1035 (D.Haw.1973) (denial of motion to dismiss suit against government defendants who stopped protesters from entering Air Force base during Presidential visit); Farber v. Rizzo, 363 F.Supp. 386 (E.D.Pa.1973) (civil contempt entered against defendants who violated TRO that allowed protesters to remain in a public forum); Sparrow v. Goodman, 361 F.Supp. 566, 568 (W.D.N.C.1973), aff'd sub nom. Rowley v. McMillan, 502 F.2d 1326 (4th Cir.1974) (preliminary injunction against police and Secret Service who excluded dissenters from Presidential event at arena)). Of these cases, only Mahoney, Glasson, and Pledge of Resistance reached the question of whether a constitutional violation occurred. Plaintiffs fail to recognize a crucial distinction between those, three cases and this case: First Amendment protection, in those cases because the plaintiffs wished to speak or demonstrate in a public forum. Given that distinction, these cases, decided prior to significant First Amendment developments, cannot constitute the clearly established law.
The most similar case weighs against Plaintiffs’ argument that the alleged constitutional right was clearly established. In Sistrunk v. City of Strongsville, 99 F.3d 194 (6th Cir.1996), the plaintiff sought access to a Bush-Quayle rally being held at a city park. Id. at 196. The campaign committee had obtained a permit to hold the rally, and the permit provided that the grounds were “limited to the members of the organization and their invitees.” Id. The plaintiff obtained a ticket to the rally, and tried to enter wearing a Bill Clinton button. Id. But the “committee prohibited rally participants from carrying or displaying signs or buttons that carried messages critical of President [George H.W.] Bush.” Id. Once the plaintiff surrendered her Clinton button, she was allowed to attend the rally. Id. The Sistrunk court analogized the Presidential rally to the parade in Hurley v. Irish-Amencan Gay, Lesbian & Bisexual Group of Boston, 515 U.S. 557, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995). In Hurley, “the state could not require private citizens who organized a parade through public streets to include among the marchers a group imparting a message the organizers did not wish to convey.” Sistrunk, 99 F.3d at 198 (citing Hurley, 515 U.S. at 572-74, 115 S.Ct. 2338). Similarly, the plaintiff in Sistrunk wanted to require the rally organizers to accept her displayed views in their expressive activity, the rally. Id. at 199. “[T]he committee that organized the rally for George Bush could not be compelled to include in its message an expression of confidence for Clinton.” Id. Thus, Sistrunk upheld the exclusion of the attendee.
In sum, no specific authority instructs this court (let alone a reasonable public official) how to treat the ejection of a silent attendee from an official speech based on the attendee’s protected expression outside the speech area. To be sure, in some obvious situations, general authority may put a reasonable public official on notice that his or her conduct is violative of constitutional rights. This is not one of them.
Because it is plain that the constitutional right claimed was not clearly established at the time of the alleged violation, Defendants are entitled to qualified immunity. Therefore, we need not reach the question of whether Defendants violated Plaintiffs’ constitutional rights.
AFFIRMED.

. Thus, this case differs from Glasson v. City of Louisville, 518 F.2d 899, 902 (6th Cir.1975), where a police officer took a sign critical of the President and tore it up, thereby suppressing the plaintiff's speech.
The dissent insists that this case is about “the exercise of First Amendment rights embodied in Ms. Wiese’s bumper sticker.” First, the issue on appeal as framed by the Plaintiffs is whether the President has a right to exclude from his appearances those who disagree with his policies and whether it is clearly established that individuals have a right to be free from viewpoint discrimination. Aplt. Br. at 9, 13-14, 20. Aside from law on viewpoint discrimination, framing the issue in this manner implicates the intersection of the President’s rights as a speaker under the government speech doctrine, his rights to expressive association, and the nature of the forum. Second, such a formulation suggests the case really should have been structured as a First Amendment retaliation case—Plaintiffs were not allowed to attend in retaliation for the constitutionally protected speech on the bumper sticker. See Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir.2000) (requiring that a plaintiff (1) be engaged in constitutionally protected activity; (2) suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) defendants’ actions were motivated by plaintiffs’ protected activity). No such argument appears in the briefs. The potential relevance of these doctrines reveals that the proper categorization of this case is far more complicated than the dissent acknowledges and that Plaintiffs’ rights are far from clearly established.
Of course, when it comes to qualified immunity, merely stating that the government cannot engage in viewpoint discrimination is just about as general as stating that the government cannot engage in unreasonable searches and seizures—an approach that is too general for the qualified immunity analysis where a plaintiff has the burden of demonstrating not only a constitutional violation, but also a violation of clearly established law. Compare Aplt. Reply Br. at 8 ("public forum analysis is irrelevant in this case because viewpoint discrimination is impermissible in any forum.”) with Anderson v. Creighton, 483 U.S. 635, 639-41, 107 S.Ct. 3034, 97 L.Ed.2d *1169 523 (1987) (a formulation that warrantless searches are not permitted absent probable cause and exigent circumstances is too general for qualified immunity purposes).

. Plaintiffs have not argued that Mr. Young's desire to ask a question if given the opportunity confers any additional First Amendment protections to their presence at the speech. Rather, they argue, their mere presence at an official Presidential speech, open to the public, was protected by the First Amendment.