**UNITED STATES COURT OF APPEALS** January 6, 2014

**TENTH CIRCUIT**

ERIC WATKINS,

      Plaintiff - Appellant,

v.

CORRECTIONAL OFFICER
DONNELLY; MRS. INGRAM,
Lieutenant, FTC; MR. MONROE,
Food Service Supervisor; MARK J.
MANTEUFELL; PAUL A.
KASTNER,

      Defendants - Appellees.

No. 12-6062
(D.C. No. 5:09-CV-01381-C)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **McKAY** and **HOLMES**, Circuit Judges.

Plaintiff-Appellant Eric Watkins has filed a pro se[1] appeal from the district

---

[*]      After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[1]      Because Mr. Watkins is proceeding pro se, we construe his filings

(continued...)

court's decision to deny him a default judgment and dismiss his *Bivens*[2] claims as unexhausted and barred by qualified immunity. Our jurisdiction arises under 28 U.S.C. § 1291. As explained below, we **affirm** the district court's rulings in all respects and **grant** Mr. Watkins's motion to proceed *in forma pauperis* ("IFP").

# I

The case at bar comes to us from the district court's granting of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6); as such, we recite the facts in the light most favorable to the non-moving party, Mr. Watkins. *See Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009). Our universe of facts is limited to the complaint and any exhibits and documents attached thereto or incorporated therein, so long as the authenticity of such documents is undisputed by the parties.[3] *See Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011).

While incarcerated by the Federal Bureau of Prisons ("BOP"), Mr. Watkins filed an administrative grievance, alleging that a prison official whom he later identified as Officer Donnelly had "kicked the trap door" in his cell shut, thereby

---

[1](...continued)
liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Garza v. Davis*, 596 F.3d 1198, 1201 n.2 (10th Cir. 2010).

[2]    *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[3]    The district court relied on Mr. Watkins's administrative grievances, which were attached to his amended complaint, and so do we.

injuring him.  R. at 81 (Request for Admin. Remedy, dated Jan. 19, 2008).  His claim was denied and he appealed to the local BOP Regional Director, who responded on a form dated April 4, 2008.  In that response, the Regional Director notified Mr. Watkins that he had referred the complaint "to the appropriate Bureau component for investigation."  *Id.* at 88 (Reg'l Admin. Remedy Appeal Resp., dated Apr. 4, 2008).  The response was delivered to Mr. Watkins on April 30, 2008 and it informed him that any further "appeal must be received in the Office of General Counsel within 30 days from the date of this response."  *Id.*

Mr. Watkins, however, submitted a document to the Office of the General Counsel (i.e., the BOP Central Office) on a form dated June 22, 2008, wherein he requested an extension of time to file his appeal on the grounds that the earlier response had been given to him so late and that prison staff had been noncompliant with his requests for the documents he needed to pursue his appeal. The BOP Central Office rejected the document as untimely.  In so doing, it informed Mr. Watkins that he was entitled to re-submit his appeal within fifteen days, but that if he did so he was required to "provide staff verification on BOP letterhead documenting that the untimely filing of this appeal was not your fault." *Id.* at 92 (Rejection Notice, dated July 7, 2008) (capitalization altered).

Instead, Mr. Watkins sued various correctional employees under *Bivens* in federal court, making out claims based on the kicking of the trap door and on the new allegation that, on the same day as that incident, he had been denied religious

3

meals.  Explaining the events that occurred on the day in question in greater detail, he asserted that he had been holding open his trap door for an extended period of time to protest the withheld religious meals.  When the issue was not resolved, Mr. Watkins began repeatedly slamming the door against his cell, creating a loud, "annoying" noise.  *Id.* at 74 (Am. Compl., filed Feb. 1, 2010).  Eventually, Officer Donnelly approached the cell and kicked the door against Mr. Watkins's hand, causing bleeding, swelling, and pain.  Over the course of the day, Mr. Watkins was denied three religious meals.

In his amended complaint, Mr. Watkins asserted that various officers involved in the incident violated his First, Fifth, and Eighth Amendment rights and committed assault and battery against him.  Specifically, he averred (1) that Officer Donnelly used excessive force against him in violation of his Eighth Amendment rights by kicking the door;[4] (2) that a group of other correctional

_____

[4]  Mr. Watkins suggests in his briefing here that he believes the incident with the door violated his Fifth Amendment due-process "right to be secure[] in his person from assault and battery," Aplt. Opening Br. at 55, and not his constitutional guarantee against excessive force.  Although as a general rule "the Eighth Amendment is the proper vehicle for evaluating excessive force claims involving prisoners," *Smith v. Cochran*, 339 F.3d 1205, 1210 n.2 (10th Cir. 2003), to the extent that the two Amendments overlap, the analysis is the same, *see Whitley v. Albers*, 475 U.S. 312, 327 (1986).  For convenience, we refer to the claim relating to the kicking of the door as an Eighth Amendment claim.

Mr. Watkins also characterizes his claim at times as one alleging assault and battery.  But Mr. Watkins sued pursuant to *Bivens*, which does not allow for non-constitutional tort claims.  Consequently, any free-standing assault and

(continued...)

4

staff members—Defendants Ingram, Monroe, Manteufell, and Kastner ("the Ingram Defendants")—violated his Eighth Amendment rights by allowing the assault to occur; and (3) that the Ingram Defendants[5] violated his First Amendment Free Exercise Clause rights by denying him three religious meals in one day.

The Ingram Defendants and Officer Donnelly both failed to submit timely answers to the complaint. When Mr. Watkins called attention to their lateness, the district court clerk entered default against both the Ingram Defendants and Officer Donnelly. To justify their tardy filings, the Ingram Defendants told the court that they had been under the impression that a pending recommendation by a magistrate judge to dismiss the action for Mr. Watkins's failure to effectuate timely service nullified their answer deadline. Officer Donnelly, for his part, sought to excuse his untimely answer by pointing to computer problems in his attorney's office. Unimpressed, Mr. Watkins moved the district court to enter default judgment against all the defendants. The district court did not do so. Instead, the court elected to vacate the default entries and, after deciding to adopt

_____

[4](...continued)
battery claim is not cognizable in this appeal.

[5]     Mr. Watkins accused other, subsequently dismissed, defendants of sharing in the free-exercise liability, but we do not read his amended complaint as accusing Officer Donnelly of having any responsibility for that purported violation. We understand the district court to have interpreted the complaint to the same effect.

5

the magistrate judge's recommendations over Mr. Watkins's objections, denied Mr. Watkins's motions for default judgment.[6]

The default judgment issues having been resolved, the magistrate judge subsequently issued a report and recommendation on the defendants' motions to dismiss pursuant to Rule 12(b)(6), counseling the district court to dismiss all remaining claims against all remaining defendants. As relevant here, the magistrate judge recommended (1) dismissing the excessive-force claim against Officer Donnelly without prejudice for failure to exhaust administrative remedies;[7] (2) dismissing the free-exercise claim against the Ingram Defendants without prejudice for failure to exhaust administrative remedies; and (3) dismissing the Eighth Amendment claims against the Ingram Defendants with prejudice on qualified immunity grounds. Overruling Mr. Watkins's objections, the district court adopted the magistrate judge's recommendation in its entirety and dismissed all claims against all defendants.

## II

Mr. Watkins appeals on three principal grounds. First, he argues that the

---

[6] At the district court, some discussion over various filing deadlines and extensions overlapped with the discussion over the default issues. Only the latter have any significance to the instant appeal.

[7] Upon the magistrate judge's recommendation, the district court dismissed without prejudice Mr. Watkins's official-capacity claims against the defendants as barred by the Eleventh Amendment. Mr. Watkins does not challenge that ruling on appeal.

6

district court erred in setting aside the default entries and then denying his motions for default judgment. Second, he submits that his free-exercise and excessive-force claims should not have been dismissed for failure to exhaust. Third, he asserts that the Ingram Defendants were not entitled to qualified immunity. We are unpersuaded by Mr. Watkins's contentions on all three grounds; accordingly, we affirm the district court's judgment.

## A

Mr. Watkins finds fault with the district court's decision to set aside the clerk's entry of default and finds fault with its attendant denial of his motions for default judgment. We review such decisions for abuse of discretion. *See Harvey v. United States*, 685 F.3d 939, 945 (10th Cir. 2012) ("We review a district court's denial of a motion for default judgment for abuse of discretion."); *Nikwei v. Ross Sch. of Aviation*, 822 F.2d 939, 941 (10th Cir. 1987) (noting that the setting aside of default entries "is addressed to the sound discretion of the trial court"). For the reasons that follow, we conclude that the district court did not abuse its discretion.

## 1

Much of Mr. Watkins's briefing on the default issue concerning the Ingram Defendants is devoted to reiterating his view that the magistrate judge's recommendation to dismiss for failure to serve did not nullify the defendants' deadline to answer. The district court actually agreed with Mr. Watkins on this

7

legal proposition but, from its perspective, that did not control the outcome. Specifically, the court did not deny default judgment because the Ingram Defendants had a legally correct theory concerning the time for filing their answer; rather, the court did so because it thought their legally *incorrect* theory nevertheless supplied good cause.

Mr. Watkins also argues that the Ingram Defendants failed to show good cause for the default, but he is mistaken. Courts "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "In deciding whether to set aside an entry of default, courts may consider, among other things, 'whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.'" *Pinson v. Equifax Credit Info. Servs.*, 316 F. App'x 744, 750 (10th Cir. 2009) (quoting *Dierschke v. O'Cheskey (In re Dierschke)*, 975 F.2d 181, 183 (5th Cir. 1992)).

As the district court found, the Ingram Defendants' reliance upon the magistrate judge's recommendation to dismiss was negligent at most, not willful. Moreover, there is no indication that Mr. Watkins was prejudiced by the delay. Lastly, as demonstrated *infra*, the Ingram Defendants did have a meritorious defense, namely, qualified immunity. Thus, the district court did not abuse its discretion in setting aside the entry of default.

Entry of default by the clerk is a necessary prerequisite that must be performed before a district court is permitted to issue a default judgment. *See*

8

*Garrett v. Seymour*, 217 F. App'x 835, 838 (10th Cir. 2007) (describing the entry of default as "a prerequisite for the entry of a default judgment"); 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2682, at 13 (3d ed. 1998) ("Prior to obtaining a default judgment . . . , there must be an entry of default . . . ."). Because the district court properly set aside the entry of default, and because a default judgment cannot have been entered in the absence of such entry, it ineluctably follows that the district court did not abuse its discretion in denying Mr. Watkins's motion for default judgment against the Ingram Defendants.

**2**

Mr. Watkins's only discernible argument against the default judgment rulings regarding Officer Donnelly is a regurgitation of his argument to the district court that defense counsel's computer problems were irrelevant because they began while the answer was already late. As before, though, the district court *accepted* this contention and nevertheless set aside the entry of default. Its decision to do so was not an abuse of discretion. We have nothing before us on which to base a conclusion that the conduct resulting in the *initial* lateness—before the computer problems—was willful, the district court correctly found that Officer Donnelly had colorable defenses, and no prejudice was apparent. The district court acted within the proper range of its discretion in vacating the entry of default, and accordingly (for the reasons noted regarding the Ingram Defendants) also properly exercised its discretion in denying Mr.

9

Watkins's motion for default judgment against Officer Donnelly.

**B**

Relying on Rule 12(b)(6), the district court dismissed Mr. Watkins's excessive-force claim against Officer Donnelly for failure to exhaust administrative remedies. We review the dismissal de novo, "accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to" Mr. Watkins. *Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1267 (10th Cir. 2003). Applying this forgiving standard of review, we find that the claim was unexhausted and as such properly dismissed.

By law, a federal inmate with a *Bivens* claim must exhaust all available administrative remedies before bringing his complaint to court. *See Yousef v. Reno*, 254 F.3d 1214, 1221 (10th Cir. 2001). The issue of whether Mr. Watkins failed to exhaust his excessive-force claim against Officer Donnelly hinges on what Mr. Watkins did and did not do after April 30, 2008, when he was notified of the initial appeal's disposition. What Mr. Watkins did do was submit a form on June 22, 2008, requesting an extension of time on the ground that the earlier response had been given to him late, and explaining that he had been unable to obtain various documents he needed in order to pursue his appeal. What Mr. Watkins did not do was (1) request an extension within the four-day window to appeal; (2) re-submit his appeal after the lapsing of the appeal deadline, as the BOP permitted him to do; or (3) attempt to timely appeal within the four days he

10

still had left to do so.  The district court held that Mr. Watkins's inaction in this regard precluded him from taking his claim to federal court.  We agree.

Under the BOP's regulations, an appeal from the Regional Director to the General Counsel—the appeal Mr. Watkins never made—must be submitted "within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a).  However, "[w]hen the inmate demonstrates a valid reason for delay, these time limits may be extended."  *Id.*  Because Mr. Watkins failed to submit a timely appeal, then, he was required to show a valid reason for it.  This he never did.  The only explanations Mr. Watkins has offered for his failure to file a timely appeal are (1) that the Regional Director's response was delivered to him at such a late date that he had only four days to submit a timely appeal from it; and (2) that he was not given paperwork he needed in order to file a further appeal or re-submit his appeal.  By Mr. Watkins's own admission, though, he only began seeking the necessary paperwork on May 14, 2008, well after his window had closed.  And he never re-submitted his appeal at all, even a flawed appeal accompanied by an explanation of the reason for the deficiency.  Had he done so, he would have at least established a record that he was doing all he could do to comply with the administrative process, despite the alleged circumstances making it challenging for him to do so.

Ostensibly, Mr. Watkins assumed that any effort to comply with the deadlines and the administrative processes available to him would have been

11

futile. However, Mr. Watkins could not rely on such an assumption, fail to do all that he reasonably could do, and then reasonably expect to be heard in federal court on his claim. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("Even where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available."). Rather, Mr. Watkins was required to take every possible step within his power to complete the administrative appeals process. *See id.* at 1033 ("Mr. Jernigan may not successfully argue that he had exhausted his administrative remedies by, in essence, failing to employ them . . . .").

Mr. Watkins asks us to consider the limited amount of time he had to file a timely appeal and to consider the apparent difficulty he was having in obtaining the documents he needed to either appeal or re-submit his appeal. At bottom, he wants us to conjecture as to what *might* have occurred *if* he had endeavored to pursue his administrative appeal in a timely fashion or *if* he had re-submitted his appeal, in whatever form he was able to submit it. We decline to excuse Mr. Watkins's failure to exhaust by speculating as to what might have happened had he sought to vindicate his rights through the administrative process afforded to him; it was his obligation to spare us from engaging in such speculation. *Cf. Feuer v. McCollum*, 139 F. App'x 928, 931 (10th Cir. 2005) (rejecting a prisoner's exhaustion argument where he failed to request an extension to file an administrative appeal even though "he *may* have been entitled to" one (emphasis

12

added)). In short, Mr. Watkins's excessive-force claim against Officer Donnelly was properly dismissed as unexhausted.

## C

On qualified immunity grounds, the district court dismissed Mr. Watkins's claims against the Ingram Defendants with prejudice. Mr. Watkins now challenges that ruling. Our review of the district court's dismissal is de novo. *See Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010). A government official is entitled to qualified immunity where his actions did "not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Qualified immunity is overcome where two requirements are met: (1) a constitutional violation took place that (2) violated a clearly established right. *See Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010). A court may dismiss a claim on either prong without addressing the other. *See id.* The district court dismissed Mr. Watkins's free-exercise claim because it alleged no constitutional violation. It dismissed his excessive-force claim against the Ingram Defendants on qualified-immunity grounds because the claim implicated no clearly established right. Finding no error in the district court's disposition in either respect, we affirm.

### 1

The district court viewed Mr. Watkins's free-exercise claims as barred by

13

qualified immunity because the purported violation—the denial of three religious meals in one day—was de minimis.[8]  We think the same.

In a recent decision, we cited approvingly to the Seventh Circuit's conclusion that a prisoner's lack of access to a religious meal on three occasions qualified as a de minimis burden on religious exercise, and thus could not support a constitutional claim.  *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1321 (10th Cir. 2010) (citing *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999)).  Mr. Watkins seeks to distinguish these cases on the ground that he was suing in part because the denial of the meals was to punish him for his obstreperous behavior, and was not the result of shortages or limited resources.  Be that as it may, the de minimis inquiry goes to the *burden* on the religious exercise, *see id.* at 1321 (discussing the unavailability of religious food to an inmate "as a 'de minimis *burden*'" (emphasis added) (quoting *Rapier*, 172 F.3d at 1006 n.4)), not to the officers' *motivation*, *cf. Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) ("*Even with* [malicious and sadistic] motivation, not every push or shove violates the Constitution, but any use of force *greater than de minimis*, or any use of force that is 'repugnant to the conscience of mankind,' does." (emphases added)

---

[8]  The district court also held that Mr. Watkins failed to exhaust his free-exercise claim by neglecting to voice it in his administrative grievance forms.  Mr. Watkins contests that holding on appeal.  We do not address exhaustion with respect to the free-exercise claim because we hold that the claim was properly dismissed on qualified-immunity grounds and therefore affirm the district court on that basis.

(quoting *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992))); *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) ("Some acts, *though maybe motivated by retaliatory intent*, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights" and thus "do not rise to the level of constitutional violations." (emphasis added)). It was proper for the district court to find that the burden was de minimis and thus proper for it to grant qualified immunity to the Ingram Defendants on this claim.

## 2

The district court determined that the Ingram Defendants were entitled to qualified immunity on Mr. Watkins's Eighth Amendment claim because there was no clearly established "constitutional or statutory duty to prevent an inmate from holding open his food tray door." R. at 245 (Report & Recommendation, filed Dec. 19, 2011). On appeal, Mr. Watkins frames his challenge to the ruling as based not on a duty to keep him from holding his door open, but on a duty to "keep [him] in a safe condition of confinement when [the Ingram Defendants] were made aware that [he] was not in a safe condition of confinement due to his holding . . . the food tray trap door" open. Aplt. Opening Br. at 59. They should have made sure of his safety, Mr. Watkins says, by running through various security protocols. No matter how Mr. Watkins chooses to package his argument, it remains in substance the same: that the Ingram Defendants are liable for Officer Donnelly's kicking of the door.

15

Under certain circumstances, prison officials have a duty pursuant to the Eighth Amendment to protect inmates from violence inflicted by fellow officials. *See United States v. Serrata*, 425 F.3d 886, 896 (10th Cir. 2005). A failure-to-protect claim must allege facts suggesting that a prisoner faced a substantial risk of harm of which the officials had subjective knowledge. *See Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994). In order to accept Mr. Watkins's argument, then, we would have to hold that Mr. Watkins's decision to hold his trap door open and to bang it loudly against his cell exposed him to a substantial risk of harm. We would have to further hold that the Ingram Defendants, purely by virtue of observing his unruly behavior, were aware that his safety was in jeopardy and had a duty to intervene to protect him. Like the district court, we are unaware of any precedent imposing such an onerous and amorphous duty. The Eighth Amendment does not oblige prison officials to prophesy the injuries that might befall inmates while they engage in deliberately disruptive conduct.

**D**

Mr. Watkins filed a motion with the district court for leave to appeal IFP. Finding that the appeal was not taken in good faith, the district court denied the motion. Mr. Watkins renews his request for IFP status here. Although Mr. Watkins's arguments are ultimately unsuccessful, we nevertheless consider them to be, in part, "reasoned" and "nonfrivolous," and regard the appeal as taken in good faith. *Rolland v. Primesource Staffing, L.L.C.*, 497 F.3d 1077, 1079 (10th

16

Cir. 2007).  We therefore accommodate Mr. Watkins's request to proceed IFP.

## III

For the reasons detailed above, we **affirm** the district court's rulings in all respects and **grant** Mr. Watkins's motion to proceed IFP.

Entered for the Court

JEROME A. HOLMES
Circuit Judge