**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 28, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RAYMOND VEGA, personally and as
personal representative of the Estate of
Jose Martin Vega,

      Plaintiff - Appellant,

v.

BLAKE R. DAVIS and certain additional
unknown agents of the United States
Bureau of Prisons,

      Defendants - Appellees.

No. 16-1028
(D.C. No. 1:12-CV-01144-RPM)
(D. Colorado)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **HARTZ**, and **McHUGH**, Circuit Judges.
_____

This appeal arises from a *Bivens* action in which Petitioner Raymond Vega

(Plaintiff) claims that former warden Blake Davis (the Warden) was deliberately

indifferent to the serious medical needs of Plaintiff's brother Jose Vega (Vega), in

violation of the Eighth Amendment. *See generally Bivens v. Six Unknown Named*

*Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff alleges that the

Warden failed to provide Vega with adequate mental health care, which led Vega to

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

commit suicide. After an initial round of litigation in which this court ultimately reversed and remanded the district court's denial of qualified immunity, the district court permitted Plaintiff to amend his complaint. After reviewing the newly amended complaint, the district court granted the Warden qualified immunity. We affirm because the allegations in the amended complaint fail to state a plausible Eighth Amendment violation. As tragic as the facts of this case are, nothing in the amended complaint supports a reasonable inference that the Warden was deliberately indifferent to Vega's mental health needs.

## I.  BACKGROUND

### A.  *Factual History*[1]

On May 1, 2010, while housed at the U.S. Penitentiary, Administrative Maximum, in Florence, Colorado (ADX Florence), Jose Vega hanged himself from his cell door using his bedsheet. Prison staff attempted to revive him but were unsuccessful, and Vega died. Plaintiff alleges that Vega's suicide risk should have been eminently clear to the Warden, given Vega's history of psychiatric treatment, including the fact that Vega was classified in March 2003 as a "high suicide risk" and underwent psychiatric treatment several times over the following two years at the United States Medical Center for Prisoners in Springfield, Missouri (MCFP Springfield).

---

[1] Much of the factual history of this case has been explored in the prior panel's order and judgment. *See Vega v. Davis*, 572 F. App'x 611, 613–14 (10th Cir. 2014) (unpublished). Though we highlight some of the more salient facts here, we focus largely on the "newly discovered" evidence presented in the Second Amended Complaint.

The Warden was assigned to ADX Florence from July 13, 2009 to April 21, 2012, so much of Vega's psychiatric history pre-dates his tenure. This includes Vega's alleged diagnosis of paranoid schizophrenia, his multiple transfers to MCFP Springfield, and his multiple transfers back to ADX Florence's Control Unit. The Control Unit is the most secure unit at the facility, and prisoners housed there "are isolated from the other prisoners at all times, even during recreation, for extended terms often lasting six years or more." Vega was initially placed in the Control Unit after an incident in which he "slashed the left side of [a staff member's] face with a single edged razor blade," causing a deep laceration to the staff member's left cheek and ear lobe which required 28 sutures to close. Vega's final transfer back to ADX Florence occurred in November 2006; Vega remained in the Control Unit from then until his death in May 2010. Plaintiff alleges that Vega's assignment to the Control Unit prevented him from receiving proper mental health treatment.

Plaintiff alleges that in the months prior to his death, Vega was placed into four-point ambulatory restraints on several occasions. Plaintiff also alleges that Vega "had lost as much as 50 pounds, customarily wore grossly ill-fitting clothes and shoes, was no longer maintaining physical hygiene, and was largely incoherent." The Warden claims that there is no evidence he was involved in several of the restraint incidents, that several of the allegations are unsupported by record evidence, and that there is nothing to suggest Vega was placed in restraints for mental health reasons.

Plaintiff also alleges a number of "newly discovered" facts[2] in his amended complaint which he suggests demonstrate the Warden was aware of Vega's behavior and deteriorating medical condition. This includes a behavior management plan the Warden sent to the Bureau of Prisons' (BOP) Regional Director, which was implemented a few days before Vega's death. The plan outlines the need for prison staff to place Vega in hard, ambulatory restraints. In the plan, the BOP staff psychologist concluded that Vega had "no current mental health issues" and that the restraints did "not seem to [have] a negative impact on mental health functioning." The prison's review board, which included the Warden and the staff psychologist, signed off on the plan.

A subsequent "Psychology Services Restraint Check Form" completed by the staff psychologist notes that Vega requested a transfer, but that it was denied because "Vega's behavior is not accounted for by mental illness." That form also notes that a summary of Vega's "psychology history" was included on the prior day's form, but that prior day's form is not in the record. The district court relied heavily on the psychologist's conclusions in holding that the Warden was entitled to qualified immunity.

---

[2] As an alternative ground for affirmance, the Warden suggests the district court erred in granting Plaintiff leave to amend his complaint. Specifically, the Warden argues that all of the "newly discovered" facts were not "new" at all, since Plaintiff could have filed FOIA requests and otherwise gained access to the "new" information before filing his initial complaint. *See Kirby v. Resmae Mortg. Corp.*, 626 F. App'x 746, 748 (10th Cir. 2015) (unpublished) (noting that relief may be warranted "when there is new evidence that was *previously unavailable*" (emphasis added)). We need not reach this issue because we decide that the motion to dismiss the amended complaint was properly granted.

Plaintiff's Second Amended Complaint also cites to various other documents, including Control Unit Review Forms and the coroner's report. The Control Unit Review Forms discuss Vega's adjustment to the Control Unit and his "release readiness" factors, which include quarters sanitation, personal grooming and cleanliness, personal relationship with others and staff, work involvement, and self-improvement activities. Although the Warden did not participate in the Control Unit reviews, he did sign seven of Vega's forms, which consistently showed poor quarter's sanitation, poor personal grooming and cleanliness, and poor relationships with other inmates and staff. In addition to these forms, Plaintiff submitted three Control Unit Executive Panel Review Forms which summarize the reasons for Vega's placement in the Control Unit and make recommendations regarding Vega's continuation in the Control Unit. The Warden reviewed these forms, but he was not a member of the Executive Panel that actually conducted the reviews.[3] Each of the Control Unit Executive Panel Review Forms showed that Vega had received incident reports requiring him to be on "Disciplinary Segregation status." The forms also indicated that his interactions with staff were deemed poor.

Next, Plaintiff's Second Amended Complaint contains a transcript of record from a separate lawsuit in which another inmate indicated that Vega was "well-known at ADX Florence for having committed most of the assaults on staff members from 2008-2010." The inmate was "pretty sure he had written to Warden Davis

---

[3] *See* 28 C.F.R. § 541.45 ("The Executive Panel is composed of the Regional Director of the region where a control unit is located . . . and the Assistant Director, Correctional Programs Division.").

expressing alarm at the condition of inmate Vega," but he lacked specific memory of it. Plaintiff also provided the coroner's report for Vega's death, in which the coroner opined that Vega "died as a result of hanging" and that the manner of death was suicide. The report also noted that the attending physician's assistant and the ADX health administrator reported that Vega "had a long psychiatric history."

Finally, the Second Amended Complaint references several BOP policies which Plaintiff alleges create an inference that the Warden was aware of Vega's mental health issues but disregarded them. To begin, the BOP's Program Statement 5310.13 on the Institutional Management of Mentally Ill Prisoners, provided that the Warden was to assign a program coordinator to assess and treat mentally ill inmates. That policy also required the coordinator to report to relevant staff members, including the Warden, and to train staff members on identifying and reporting mental illness. The policy also required incoming inmates like Vega, who have mental health issues or are at risk of suicide, to undergo a screening process, and Plaintiff alleges that ADX Florence gave only "perfunctory interviews that are wholly inadequate as a form of screening or diagnosis."

Plaintiff also cites to the BOP's policy on the use of force, which specified the process for the Warden to receive documented reviews of an inmate during his time in restraints. BOP Program Statement P5566.06, "Use of Force and Application of Restraints," p. 18. The reviews included a fifteen-minute check, a two-hour lieutenant check, a health services staff review, and a psychology staff check. *Id.* at 18–19. These reviews were provided to the Warden each 24-hour period the inmate

6

was in restraints. *Id.* Also, prison staff were required to ensure the inmate's time in the restraints was video recorded. *Id.* at 19. The Warden received and reviewed any such videos and then forwarded them to the Regional Director for review. *Id.*

### B. *Procedural History*

Plaintiff initially filed this *Bivens* action on behalf of Vega in May 2012, alleging that the Warden's deliberate indifference to Vega's serious mental health needs resulted in Vega's death. *Vega v. Davis*, 572 F. App'x 611, 612 (10th Cir. 2014) (unpublished) [hereinafter *Vega I*]. The district court denied the Warden's motion to dismiss based on qualified immunity, and we reversed and remanded, concluding that Plaintiff's complaint failed to allege the Warden's personal participation in any constitutional violation. *Id*. at 615–19.

On remand, the district court entered judgment for the Warden, and Plaintiff then filed a motion for relief from judgment and leave to file a Second Amended Complaint pursuant to Federal Rules of Civil Procedure 59(e) & 60(b)(2), in order to include "newly discovered evidence." The district court granted the motion, reasoning that the evidence presented a reasonable inference that the Warden knew "Vega was a high risk of suicide requiring protective measures that would have kept him alive and that the warden had a duty to direct such actions." Vega filed his Second Amended Complaint on July 15, 2015, and the Warden again moved to dismiss.

In December 2015, the district court granted the Warden's motion to dismiss, relying heavily on the staff psychologist's report from days before Vega's death. As

7

mentioned above, the report indicated that Vega's behavior was "not accounted for by mental illness." The district court found that the "defendant [could] reasonably rely on the staff psychologist and approve the continued use of restraints because of assaultive behavior without himself determining that inmate Vega had untreated mental health issues." The court also determined that the "additional allegations [did] not meet the requirements stated by the appellate court to support a finding that Warden Davis knew that inmate Vega had a mental condition that required treatment to keep him from hanging himself." Plaintiff timely appealed.

## II.  DISCUSSION

On appeal, Plaintiff argues that the district court erred in granting the Warden's motion to dismiss. He asserts that the Second Amended Complaint properly alleges the Warden's deliberate indifference toward Vega's mental health needs, including that the Warden personally participated in depriving Vega of needed medical care. The Warden disagrees, claiming that the complaint lacks sufficient allegations with respect to his personal participation and subjective state of mind. He also contends that the conduct alleged in the complaint does not constitute a violation of clearly established law. We agree the complaint fails to state a plausible Eighth Amendment deliberate indifference claim, and we accordingly affirm.

### A.  *Standard of Review*

"This court reviews de novo a district court's grant of a motion to dismiss based on qualified immunity." *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010). "To survive a motion to dismiss, a complaint must allege facts that, if true,

8

state a claim to relief that is plausible on its face. A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016) (citation and internal quotation marks omitted). The complaint must be dismissed if a plaintiff fails to "nudge[] [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**B.** ***The Second Amended Complaint Does Not Support a Claim of Deliberate Indifference***

Although Plaintiff's Second Amended Complaint does "nudge" his deliberate indifference claim more toward the line of plausibility than his initial complaint, *id*., it still fails the facial plausibility standard. "In resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks omitted). "This standard, by design, 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," which includes deliberate indifference to the serious medical needs of prisoners in custody. *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976). To prevail on

9

an Eighth Amendment deliberate-indifference claim against prison officials, an inmate must satisfy "a two-pronged inquiry, comprised of an objective and subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The objective component is met where the deprivation is "sufficiently serious." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (internal quotation marks omitted).

The subjective component requires a plaintiff to demonstrate that officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Under this standard, "a prison official cannot be liable 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Self*, 439 F.3d at 1231 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This rigorous standard separates Eighth Amendment claims from state-law negligence actions—"the negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Id*. at 1233 (quoting *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999)).

Under the standard outlined above, Plaintiff was required to demonstrate that the Warden was aware of facts from which the inference could be drawn that Vega was at a substantial risk of harm or suicide, and the Warden "must also draw the

10

inference." *Id*. at 1231. The Second Amended Complaint fails in both respects.[4] To begin, it contains insufficient allegations with respect to the Warden's knowledge. The complaint does allege that the Warden was aware of Vega's poor behavior via the "Control Unit Reviews" and "Control Unit Executive Panel Reviews," but those documents do not indicate Vega was suicidal or suffering from mental illness. Rather, as noted by the Warden, those forms "do not include any sort of psychological review." When a psychological review actually *was* conducted in the days prior to Vega's suicide as part of the decision to place Vega in restraints, the review noted that Vega "ha[d] no current mental health issues." And a review that appears to have been conducted the following day adds that "Vega was polite, calm, and cooperative" and displayed "[n]o evidence of mood disturbance or psychosis." Though Vega did request a transfer during this subsequent review, the psychologist recommended against a referral to a mental health facility because his assaultive behavior was "not accounted for by mental illness."

Against the daunting implication of this evidence with respect to the Warden's awareness of a mental health issue, Plaintiff cites to additional evidence, including the BOP policies, the coroner's report, and evidence of Vega's institutional reputation, to suggest the Warden was aware of Vega's condition and behavior. But one cannot plausibly draw an inference from this information that the Warden both knew that Vega was suffering from a mental illness and then consciously disregarded

---

[4] Because Plaintiff's Second Amended Complaint fails to satisfy the subjective component of the Eighth Amendment inquiry, we do not address whether the right at issue was clearly established.

11

the risks of leaving Vega's condition untreated. To be sure, reliance on a medical professional's opinion does not foreclose a finding of deliberate indifference to a prisoner's serious medical needs in all circumstances. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."). But here Plaintiff has provided no evidence that the Warden knew the psychological opinion was not a valid expression of professional judgment, was based on materially false or outdated information, or contradicted the contemporaneous opinion of a more qualified expert. In short, there is nothing that creates a plausible inference that despite the contrary report of the prison psychologist, the Warden knew Vega was currently suffering from mental illness and at risk of suicide but was nonetheless deliberately indifferent to that risk.

Moreover, Plaintiff fails to demonstrate how one can infer the Warden was aware of any of the facts that pre-dated his tenure. As this court admonished during the prior appeal, "[t]he mere presence of records, by themselves, does not create the reasonable inference that Davis read them. The plaintiff fails to explain why it is reasonable to infer that a warden would review all of the records of each inmate, or each inmate in the Control Unit, or [Vega's] records in particular." *Vega I*, 572 F. App'x at 618. In the current appeal, Plaintiff suggests it is reasonable to conclude that the Warden was aware of Vega's earlier mental health history because he "reviewed documents related to [Vega] that outlined his disciplinary history dating back to 2003." We are not persuaded.

12

Although the Warden did review documents that discussed Vega's behavior in 2003—specifically, the assaultive behavior that landed Vega in the Control Unit—those documents say nothing about mental illness. Though the Warden, by reviewing these documents, clearly became aware of Vega's *conduct*, there is nothing to suggest he was aware of or knowingly disregarded Vega's *mental health*, particularly where the facility's own psychologist opined that Vega "ha[d] no current mental health issues." *See Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.").

## III. CONCLUSION

Because Plaintiff's complaint fails to state a plausible Eighth Amendment deliberate indifference claim, we AFFIRM the district court's order granting the Warden's motion to dismiss.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

13